UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **RONDA THOMAS,**<br>    Plaintiff,<br><br>v.<br><br>**AMENTUM SERVICES INC.,**<br>    Defendant. | **Case No. 1:21-cv-407-CLM** |

## MEMORANDUM OPINION

Plaintiff Ronda Thomas ("Thomas") sues Amentum Services, Inc. ("Amentum") for discriminating against her because of pregnancy, sex, disability, and race, and for retaliating against her for complaining about discrimination and filing an EEOC complaint. For the reasons stated below, the court **DENIES IN PART** and **DENIES AS MOOT IN PART** Amentum's motion to strike (doc. 51), and **GRANTS** Amentum's motion for summary judgment (doc. 31).

## BACKGROUND

This case is at the summary judgment stage, and frankly, the court struggled to parse the pleadings and the briefing. So the court held a hearing so the parties could clarify the facts, claims, and defenses. (*See* Doc. 57). With a better understanding of the issues and arguments, here are the relevant facts, stated in a light most favorable to Thomas:

1. <u>Thomas's work for VSE</u>: VSE was a company that performed a federal contract at the Anniston Army Depot. (Doc. 33, p. 6). VSE hired Thomas to work at the Depot as an Electrician Helper in March 2019. (Doc. 1, p. 3, ¶ 14).

1

Three months later (June 2019), Thomas told VSE that she was pregnant. (Doc. 1, p. 3, ¶ 15). Soon after, Thomas's doctor gave her medical restrictions, including a limitation on her ability to lift and bend. (Doc. 1, p. 4, ¶ 20). Thomas asked VSE for accommodations, including a "modified/light duty assignment." (Doc. 1, p. 4, ¶¶ 20-21; p. 6, ¶ 40). Thomas claims that VSE refused to accommodate her, and she was forced to take early leave in July 2019. (Doc. 1, p. 4, ¶¶ 22-23; Doc. 33, p. 6, ¶ 5). While on leave, VSE reclassified Thomas as a Supply Technician. (Doc. 33, p. 6, ¶ 6). The work performed by Supply Technicians is generally similar to the work Thomas performed as an Electrician Helper.

Those facts *might* give rise to legal claims against VSE. But Thomas has not sued VSE here. Thomas has sued Amentum Services, a company that entered the picture after Thomas took leave from VSE.

2. <u>Amentum Services</u>: In December 2019—while Thomas was still out on leave—AECOM bought VSE, and Amentum then bought AECOM. (Doc. 1, p. 4, ¶¶ 16-18). According to Thomas, Amentum placed VSE and AECOM employees who were out on medical leave into an "incumbent pool" to transition—but only if they could provide Amentum with a "return to work" date. (Doc. 48, p. 21, ¶ 6). Thomas was out on leave, but she did not have a "return to work" date. So Amentum did not process her for hire. (*See* Doc. 35-2, p. 1).[1]

The Complaint repeatedly states that VSE fired Thomas. (*See, e.g.*, Doc. 1, p. 5, ¶ 30; p. 9, ¶ 58). But Thomas's counsel confirmed at the court's hearing that Thomas was laid off after VSE lost its contract at the Anniston Army Depot. Thomas said the same thing at her deposition; specifically, she testified VSE sent her and other employees a letter that said VSE had lost its contract, so the employees would soon be laid off. (Doc. 32-4, p. 5). The parties agree that Thomas's last day of employment under the VSE contract was January 15, 2020. (Doc. 48, p. 5, ¶ 4.a).

---

[1] Amentum disputes this description of its hiring process (*see* doc. 33, p. 7-8), but at this stage, the court must accept Plaintiff's version of events.

2

The parties dispute whether Thomas was ever employed by Amentum. Thomas argues that Amentum considered her an employee because the company had a profile for her in iCMIS, a program for storing employee and applicant information. (Doc. 48, p. 3, ¶ 2). Thomas also contends that Amentum counted her as an employee in April 2020 when Amentum employees were discussing the number of Supply Technicians via email. (Doc. 44-1, p. 2-4). But Thomas also admits that she knew that she was laid off, and she knew that she needed to reapply. (Doc. 32-1, p. 33; Doc. 32-4, p. 5; *see also* Doc. 1, p. 5, ¶¶ 30-31). So the court construes all of this to mean that while Amentum expressed an intent to rehire Thomas, she was never employed by Amentum.

3. <u>Attempts at re-employment</u>: As her medical leave neared its end, Thomas reached out to Amentum about employment opportunities. One Human Resources employee told Thomas, "You have got nothing to worry about. As soon as you get released by the doctor, you will be first on the list." (Doc. 48, p. 3). And at least two other employees told Thomas she had "nothing to worry about" regarding her hire. (Doc. 32-1, p. 15). Vernon Lewis told Thomas she would be "placed in front, first on the list" whenever she was released by her doctor to return to work. (*Id.*).

On April 20, 2020, Thomas's doctor lifted her restrictions and released her to return to work. (Doc. 1, p. 5, ¶ 24). Thomas's counsel confirmed at the hearing that Thomas had no medical restrictions upon her release. Thomas then applied for various positions at Amentum, but was never interviewed or hired. (Doc. 1, p. 6, ¶¶ 36-37).

The first position Thomas applied for was Supply Tech 18525. (Doc. 33, p. 10-11). She applied on May 12, 2020, but Amentum hired Melinda Andrew, a Black female, for the position the day before. (Doc. 33, p. 11). And even if Thomas had applied sooner, Amentum would have considered her ineligible. Amentum maintains a conflict of interest policy, which prohibits employees from supervising or otherwise making employment decisions that affect their immediate family members or anyone with

whom they have a romantic or intimate relationship. (Doc. 1, p. 5, ¶ 25). And at the time of Thomas's application, Supply Tech 18525 was supervised by Daniel Ball, the father of Thomas's child. (Doc. 33, p. 11). So even if Thomas had applied when the position was open, her placement in that role would have violated Amentum's policy.

Thomas alleges that Amentum does not enforce its policy. (*See, e.g.*, Doc. 1, p. 8-9, ¶ 57). But nothing in the record supports that allegation. Thomas says that Amentum allowed a nephew to be supervised by his uncle, and allowed siblings to work on the same shift in the same departments. (Doc. 1, p. 8-9, ¶ 57). But those arrangements don't violate the plain language of the policy. And the record shows that Amentum fired an employee after discovering an undisclosed familial relationship with an employee under his supervision. (*See, e.g.*, Doc. 32-7, p. 3).

Thomas later applied for two supervisor positions: Site Supervisor 19115, and Site Supervisor 19626. (Doc. 33, p. 12-13, 16-17). But the conflict of interest policy still rendered her ineligible because she would supervise Daniel Ball, the father of her child, in both roles. (*Id.*). Site Supervisor 19115 was filled by Jerry Moore, an incumbent employee with more supervisory experience than Thomas. (Doc. 33, p. 12-13). And Site Supervisor 19616 was offered to several candidates, both male and female, and ultimately filled by Coty Flowers. (Doc. 33, p. 17).

Thomas also applied for a Production Control Clerk position. (Doc. 33, p. 11-12). Amentum determined that Thomas failed to meet the minimum qualifications for that position, and instead hired Heather Sparks, a white female, and incumbent employee. (*Id.*).

And on July 15, 2020, Thomas applied for Supply Tech 19468. (Doc. 33, p. 15-16). But like her earlier Supply Tech application, Thomas applied after the position was filled. (*Id.*) The job went to Daniel Ball, an incumbent employee, and the father of Thomas's child. (*Id.*).

4

This chart summarizes Thomas's applications:

| Position | Applied | Filled By | Amentum's Non-Discriminatory Explanation |
|---|---|---|---|
| Supply Tech 18525 | May 12, 2020 | Melinda Richard<br>Black female, incumbent | Position already filled (May 11)<br>Ball was supervisor |
| Production Control Clerk | May 13, 2020 | Heather Sparks<br>White female, incumbent | Deemed not minimally qualified |
| Site Supervisor 19115 | June 17, 2020 | Jerry Moore<br>White male, 10 yrs. exp, Amentum K (temp agent) | Ineligible: supervise Ball<br>Minimally qualified |
| Supply Tech 19468 | July 15, 2020 | Daniel Ball<br>White male, incumbent | Position already filled (July 13), not minimally qualified |
| Site Supervisor 19626 | July 21, 2020 | Coty Flowers<br>White male (offers made to females) | Ineligible: supervise Ball<br>Minimally qualified |
| Site Supervisor 20406 | Sept. 3, 2020 | Kenneth Brown | Ineligible: supervise Ball |

The briefing also discusses applications for a Material Coordinator position, and a Human Resources Manager position. But Thomas states that she "makes no claim" for these positions. (Doc. 48, p. 39).

Certain parts of the Complaint also suggest that Thomas might be bringing claims related to a Supply Tech position filled by Tim Beyers. But Thomas's counsel confirmed at the hearing that Thomas brings no claims against Amentum over that Supply Tech position. Thomas's claims pertain only to the six positions listed above.

4. <u>Legal proceedings</u>: Thomas filed an EEOC complaint on July 13, 2020. (Doc. 1, p. 2, ¶ 8). The EEOC mailed Thomas's Dismissal and Notice of Rights on December 17, 2020. (Doc. 1, p. 3, ¶ 9). Thomas filed this lawsuit within the next 90 days.[2] (*Id.*).

The Complaint includes five counts: (1) pregnancy discrimination in violation of the Pregnancy Discrimination Act, (2) gender discrimination in violation of Title VII, (3) disability discrimination in violation of the Americans with Disabilities Act and the Americans with Disabilities Act

---

[2] As the chart shows, Thomas applied for three of the six positions at issue *after* filing her EEOC complaint. Based on the attorneys' statements at the hearing, the court assumes—without finding—that Thomas exhausted her administrative remedies for all six positions because Thomas notified the EEOC about all six positions during the EEOC's investigation. *See* (Trans. 30-32).

Amendments Act, (4) race discrimination in violation of Title VII and 42 U.S.C. § 1981, and (5) unlawful retaliation. (Doc. 1).

Amentum moved for summary judgment on all of Thomas's claims. (Doc. 31). Thomas filed a brief in opposition (doc. 48), which she supports with various documents including emails, text messages, and declarations from witnesses. (*See* Docs. 33, 34). Amentum moved to strike some of those documents. (Doc. 51). So the court decides two motions here: the motion to strike (doc. 51) and the motion for summary judgment (doc. 31).

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view all evidence and make all reasonable inferences in favor of the non-moving party. *Allen v. Board of Public Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (internal quotation marks omitted). The court is "neither required nor permitted to determine whose version of any disputed fact is actually correct, or more likely to be." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022). Instead, the court's task is only to determine whether the non-moving party's version of events has evidence to support it. *Id.*

## DISCUSSION

This discussion proceeds in two parts. Part I addresses Amentum's motion to strike (doc. 51). Part II addresses Amentum's motion for summary judgment (doc. 31).

### I. Motion to Strike

Amentum asks the court to strike as inadmissible certain evidence presented by Thomas. (Doc. 51).

Amentum suggests that Doc. 43-4 is hearsay. (Doc. 51, p. 8). Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Doc. 43-4 contains an email in which Alicia Henness, an Amentum human resources employee, refers to Thomas a "Danny Ball's baby momma." But Thomas does not offer the email to prove that Danny Ball was the father of her child. That's undisputed. Thomas offers the email to prove that Amentum's employee spoke about her in a derogatory way. Thus, the email is not hearsay.

Amentum also argues that the email was never provided to the court reporter or provided with the deposition. (Doc. 51, p. 9). But Amentum produced these emails to Thomas, so it had notice of them. So the court **DENIES** Amentum's motion to strike Doc. 43-4.

The court **DENIES AS MOOT** all other documents discussed in the motion to strike. Consideration of these materials would not impact the court's ruling on the motion for summary judgment in any material way.

### II. Motion for Summary Judgment

The court addresses the counts in the order Thomas pleaded them. But first, the court notes that Thomas waived any argument that she did not set out in her brief in opposition. *T.R. by and through Brock v. Lamar County Board of Educ.*, 25 F.4th 877, 884-85 (11th Cir. 2022) (because appellant "did not raise this argument before the district court in her brief in opposition to the Defendant's motion for summary judgment… she waived this argument below"). The court applies this rule throughout.

### A. Count 1: Pregnancy Discrimination

Thomas alleges pregnancy discrimination in violation of the Pregnancy Discrimination Act.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e et eq. And the Pregnancy Discrimination Act provides that the prohibition against sex-based employment discrimination in Title VII applies with equal force to discrimination because of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see also Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000).

The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). Thus, a plaintiff can survive summary judgment on a pregnancy discrimination claim in either of two ways.

#### i. *McDonnell Douglas* Framework

The first option is to rely on the 3-step *McDonnell Douglas* framework. In Step 1, the plaintiff must prove a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) she was qualified to perform the job; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga..* 918 F.3d 1213, 1220-21 (11th Cir. 2019). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions in Step 2. *Id.* at 1221. If the defendant carries its burden in Step 2, then the plaintiff must show that the defendant's proffered reason was merely a pretext for unlawful discrimination. *Id.*

The court will dismiss Count 1 because Thomas cannot satisfy Steps 1 or 3 of the *McDonnell Douglas* framework.

1. <u>Prima facie case</u>: The briefing on this claim was minimal. Thomas asserts that but for her pregnancy, Amentum would have placed her in an open position. (*See* Doc. 48, p. 41). And Thomas asserts that she "has presented evidence that would allow a reasonable factfinder to conclude that Amentum's reasons are unworthy of credence." (Doc. 48, p. 39-40).

But as the court explained at the hearing, the Pregnancy Discrimination Act prohibits discrimination *because of* "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Thomas applied for the six positions at issue on May 12, May 13, June 17, July 15, July 21, and September 3. Thomas was not pregnant on any of these dates. Nor did Thomas have any pregnancy-related disabilities or medical conditions, or restrictions imposed by her doctor. And she didn't perceive herself as having any medical conditions. As a result, the court finds that Thomas cannot establish that she is a member of a protected class, and she thus fails to make a prima facie case.

2. <u>Pretext</u>: Even if Thomas could establish a prima facie case in Step 1, Thomas's claim would fail in Step 3 (proving pretext) because Thomas failed to respond to Amentum's nondiscriminatory explanations. *See T.R.*, *supra* (finding waiver of arguments not raised in a brief in opposition).

Thomas applied for six open positions at Amentum. Four of the six positions would have required Thomas to supervise Daniel Ball, or be supervised by Daniel Ball, in violation of Amentum's conflict of interest policy. Thomas's counsel conceded this point at the hearing. Thomas claims generally that Amentum does not enforce its policy. But there's *no* evidence in the record to support that claim. Instead, the record shows that Amentum has terminated employees for violating the policy. (*See, e.g.*, Doc. 32-7, p. 3).

Thomas applied to two jobs that would not require her to supervise or be supervised by Daniel Ball. And Amentum explained why Thomas was not hired for each of them. The first position was Supply Tech 19468, which Thomas applied for on July 15, 2020. (Doc. 33, p. 15). Amentum says that Thomas was not considered because the position had been filled

9

on July 13, 2020. (Doc. 33, p. 15). And even if Thomas had been considered, Amentum says Thomas was considered not minimally qualified by the African American recruiter. (Doc. 33, p. 15). The position was ultimately filled by Daniel Ball, the father of Thomas's child, and Thomas admits that Daniel Ball was more qualified for Supply Tech 19468 than she was. (Doc. 32-1, p. 26).

Thomas also applied for the Production Control Clerk position on May 13, 2020. And Amentum explained that the company did at first consider Thomas, but recruiters found her not minimally qualified. (Doc. 33, p. 11-12).

Thomas fails to explain whether or why these nondiscriminatory explanations are pretextual. She points to the fact that Quintez Arnold said that he did not believe in black and white relationships. (*See* Doc. 32-1, p. 16). But that fact, viewed in light most favorable to Thomas, does not support her claim. If a decisionmaker at Amentum discriminated against Thomas because of her interracial relationship, that constitutes discrimination on the basis of race—not pregnancy. And Thomas's counsel conceded this point at the hearing.

Thomas also points to the fact that an Amentum employee called her a "baby momma." (Doc. 43-4, p. 3). But in the same email, the HR employee states that there's no open position for Thomas because her employment in any of the open positions would violate Amentum's conflict of interest policy. Thomas concedes that hiring her would have violated Amentum's conflict of interest policy. So it's unclear how this statement—even viewed in the light most favorable to Thomas—is evidence of pretext.

On this record, there is no basis for a jury to conclude that Amentum's stated reasons are pretextual. So Thomas cannot meet her burden under the final step of *McDonnell Douglas*.

### ii. "Convincing Mosaic" Framework

As an alternative to the *McDonnell Douglas* framework, a plaintiff can survive summary judgment by presenting "circumstantial evidence

that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systemically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (citing *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019)) (internal quotation marks omitted).

Again, the briefing on this claim is minimal. But Thomas's counsel stated at the hearing that she thinks there "is a better argument under convincing mosaic." And she encouraged the court to "look at everything that happened with every job that she applied for." But again, Thomas's failure to make a pretext argument is fatal. *See Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

—

In sum, Thomas fails to meet her burden of establishing a prima facie case of pregnancy discrimination under any theory of proof. So the court **GRANTS** summary judgment for Amentum on Count 1.

### B.   Count 2: Sex Discrimination

Thomas merges her pregnancy and sex discrimination claims in her brief in opposition. (*See* Doc. 48). She says the issue before the court in Count 2 is "whether there is evidence to support Plaintiff's claim that Amentum discriminated against he [sic] because of her sex – specifically pregnancy." (Doc. 48, p. 38-39). Thomas says there is no argument about sex discrimination apart from the issue of pregnancy discrimination.

11

To be sure, the Complaint alleges that Amentum hired "less-qualified men to fill the positions she has applied for or requested." (Doc. 1, p. 10, ¶ 67). But Thomas makes no argument in support of this allegation. If Thomas tried to plead a separate claim of Title VII sex discrimination apart from her PDA claim, the court finds that she has waived that claim by failing to discuss it in the brief in opposition. *See T.R.*, *supra*. Because only pregnancy discrimination remains, the court **GRANTS** summary judgment for Amentum on Count 2 for the same reasons the court granted summary judgment on Count 1.

### C. Count 3: Disability Discrimination

Thomas claims that Amentum discriminated against her and failed to rehire her because of a disability.[3]

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures . . . hiring . . . and other terms, conditions, and privileges of employment." And to establish a prima facie case for disability discrimination, a plaintiff must produce sufficient evidence for a jury to find that (1) she is disabled, (2) she is a qualified individual, and (3) she was discriminated against because of her disability. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citing *Mazzeo v. Color Resolutions Int'l*, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014)). "The ADA defines the term 'disability' as (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, (2) a record of such an impairment, or (3) being regarded as having such an impairment as described in subsection (1)." *Lewis*, 934 F.3d at 1179 (some internal quotation marks omitted).

---

[3] The Complaint also mentions a failure to provide reasonable accommodations. (*See* Doc. 1, p. 11). But Thomas never worked for Amentum, so she could not have asked Amentum for reasonable accommodations. Thomas may have asked VSE for accommodations, but VSE is not the defendant here.

12

This is Thomas's briefing on Count 3:

> **ADA**
>
> To establish a *prima facie* case of disability discrimination, Claimant must show that he (1) had a disability, (2) was a qualified individual and (3) was subjected to unlawful discrimination because of his disability. Claimant has established these elements. Plaintiff has established a claim of discrimination pursuant to the ADA/ADAAA.

(Doc. 48, p. 43). Thomas does not identify her disability or argue how Amentum discriminated against her because of that disability. So the court finds that Thomas has waived her argument related to Count 3. *See T.R., supra.*

Even if Thomas did not waive her argument, the claim fails for other reasons. Thomas was released by her physician to return to work—with no restrictions—on April 20, 2020. (Doc. 1, p. 5, ¶ 24). Thomas applied for the first position at issue on May 12, 2020. (Doc. 33, p. 11). Thomas's counsel confirmed at the hearing that Thomas did not have a disability when she applied for any of the six positions at issue. And counsel confirmed that Thomas "didn't perceive herself as having conditions." The record shows that Thomas had medical restrictions before April 20, 2020 (and Amentum surely knew about that), but nothing suggests that anyone perceived her as having these restrictions after April 20, 2020. To be sure, Thomas's counsel stated on the record: "I believe she was perceived or regarded as disabled by [Amentum]." But counsel never explained who perceived Thomas in this way, and never cited evidence that tends to prove that claim. Instead, Thomas's counsel told the court that Thomas's disability claim "is the weakest claim for sure."

Nothing in the record allows a jury to find that Thomas was disabled under the ADA. Accordingly, the court finds that Thomas has failed to establish a prima facie case of disability discrimination, and **GRANTS** summary judgment for Amentum on Count 3.

### D. Count 4: Race Discrimination

Title VII prohibits employment discrimination on the basis of race. 42 U.S.C. § 2000e et eq. And like other Title VII claims, a plaintiff can survive summary judgment on a race discrimination claim by either relying on the *McDonnell Douglas* framework, or by presenting a "convincing mosaic" of circumstantial evidence that allows to infer intentional discrimination. *See Lewis v. City of Union City, Ga. (Lewis II)*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Thomas argues in her briefing that she presented a prima facie case of race discrimination under the *McDonnell Douglas* framework. And at the hearing, Thomas's counsel argued that she presented sufficient evidence to establish a "convincing mosaic" of discrimination. So the court addresses each theory in turn.[4]

#### i. *McDonnell Douglas* Framework

The same 3-step *McDonnell Douglas* framework the court described in Part A applies to Thomas's race-based claim. *See supra* at p. 8.

1. <u>Prima facie case</u>: Thomas makes no argument in her brief in opposition that would make a prima facie case of race discrimination. In a subsection of her brief titled, "Race and Retaliation," Thomas lists the elements for a prima facie case of retaliation, and then asserts that Plaintiff engaged in protected activity. (Doc. 48, p. 42). That's not an argument related to *race*. So the court finds that Thomas waived her race discrimination claim under the *McDonnell Douglas* framework by failing to brief the issue in her opposition brief. *See T.R.*, *supra*.

---

[4] The court considered the possibility that Thomas tried to plead a discrimination-based and/or retaliation-based hostile work environment claim. (*See* Doc. 1, p. 14, ¶ 105). But Thomas's counsel confirmed at the hearing that Thomas brings no such claim.

14

And Thomas's claim fails in Step 1 even if Thomas did not waive it because Thomas's Complaint and her briefs do not identify similarly situated employees.

2. <u>Pretext</u>: Assuming Thomas had not waived this claim, and she could establish a prima facie case in Step 1, Thomas fails to explain why Amentum's non-discriminatory explanations are pretextual in Step 3. The court considers each job application in turn.

- <u>Supply Tech 18525</u>

Amentum hired Melinda Richard, a Black female, and incumbent employee. (Doc. 33, p. 11). Amentum says that Thomas was not considered because she applied after the position was filled. (Doc. 33, p. 11). And even if she had applied on time, Amentum would have considered her ineligible. As explained, Amentum maintains a conflict of interest policy that prohibits employees from supervising or otherwise making employment decisions that affect their immediate family members or anyone with whom they have a romantic or intimate relationship. (Doc. 1, p. 5, ¶ 25). If Thomas were hired for the Supply Tech 18525 position, Danny Ball, the father of Thomas's child, would have been her supervisor—an arrangement that violates Amentum's recorded policy. (Doc. 33, p. 11).

And nothing in the record suggests that Amentum does not actively enforce this policy. Instead, the record shows that Amentum has terminated employees for violating the policy. (*See, e.g.*, Doc. 32-7, p. 3). To be sure, Thomas says that Amentum does not enforce the policy because they permitted an uncle to supervise his nephew. But that arrangement doesn't violate the plain meaning of the policy.

Thomas never says whether or why Amentum's explanation is pretext for race discrimination.

- <u>Site Supervisor 19115, 19626, and 20406</u>

Thomas also applied for three Site Supervisor positions. And for all of these positions, Amentum considered her ineligible because she would

15

have been supervising Daniel Ball in violation of the company's conflict of interest policy. Again, Thomas never explains whether or why this explanation is pretext. The record evidence shows that Amentum enforced this policy. And Thomas's counsel agreed at the hearing that Thomas and Ball could not work together under this policy. Thus, the court finds that Thomas has failed to carry her burden for the Site Supervisor positions.

- Production Control Clerk

Thomas also applied for the Production Control Clerk position on May 13, 2020. Amentum hired Heather Sparks, an incumbent employee, to fill the position. And while Amentum at first considered Thomas, the company found her not minimally qualified. (Doc. 33, p. 11-12). Thomas never says whether or why Amentum's explanation is pretext for race discrimination.

- Supply Tech 19468

Thomas also applied for Supply Tech 19468 on July 15, 2020. (Doc. 33, p. 15). Amentum says Thomas was not considered because the position had been filled on July 13, 2020. (Doc. 33, p. 15). The position was filled by Daniel Ball, the father of Thomas's child, who had recently stepped down from his supervisor role. (Doc. 33, p. 16). And even if Thomas had been considered, Amentum says Thomas was considered not minimally qualified by the African American recruiter. (Doc. 33, p. 15).

Thomas never says whether or why Amentum's explanation is pretext for race discrimination. And Thomas admits that Daniel Ball was more qualified for Supply Tech 19468 than she was. (Doc. 32-1, p. 26).

—

In sum, Thomas waived her *McDonnel Douglas*-based arguments on Count 4. And even if she hadn't, Thomas cannot meet her of proving a prima facie case in Step 1 or proving pretext in Step 3.

16

### ii. Convincing Mosaic Framework

A plaintiff can also survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). And again, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systemically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (citing *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019)) (internal quotation marks omitted).

Thomas presents evidence of suspicious timing and ambiguous statements. For example, a human resources employee told Thomas, "You have got nothing to worry about. As soon as you get released by the doctor, you will be first on the list." (Doc. 48, p. 3). And at least two other employees told Thomas she had "nothing to worry about" regarding her rehire. (Doc. 32-1, p. 15). Vernon Lewis told Thomas she would be "placed in front, first on the list" whenever she was released by her doctor to return to work. (*Id.*). These statements aren't necessarily binding, but their import is clear. Thomas was essentially told that she would have a job at Amentum—and in the end, she was not hired.

Thomas also claims that Quintez Arnold, a Site Manager at Amentum, told her she was not being hired because she "had a biracial son." (Doc. 32-1, p. 33). In other words, Mr. Arnold stated that Thomas was not hired because of her race.

That might be enough to paint an adequate mosaic. But again, Thomas makes no argument (at all) against the nondiscriminatory reasons offered by Amentum. And Thomas failed to brief the issue of race discrimination in her brief in opposition. So the court **GRANTS** summary judgment on Count 4 under all theories.

### E.  Count 5: Retaliation

Finally, Thomas alleges that Amentum retaliated against her for (1) complaining about pregnancy discrimination to Amentum employees, and (2) filing an EEOC complaint.

The court again applies the three-part *McDonnell Douglas* framework.[5] This means that Thomas bears the initial burden to prove a prima facie case, then the burden then shifts to Amentum to produce a legitimate, non-discriminatory reason for its actions, and finally, the burden returns to Thomas to provide evidence of pretext.

1. <u>Prima facie case</u>: To establish a prima facie case of retaliation, Thomas must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009)). To establish a causal connection, Thomas must show that (1) the decisionmakers knew of her protected activity, and (2) the protected activity and the adverse action were not wholly unrelated. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

Thomas has established a prima facie case of retaliation. The record shows that she engaged in a statutorily protected activity when she (1)

---

[5] Thomas does not argue that the "convincing mosaic" theory could be used to establish her retaliation claim. And the Eleventh Circuit has never held that the "convincing mosaic" theory can be used to establish a retaliation claim. *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273, n.2 (11th Cir. 2021).

complained to Quintez Arold about discrimination between January 2020 through June 2020 (doc. 32-1, p. 13-14), and (2) filed an EEOC complaint on July 13, 2020 (doc. 1, p. 2, ¶ 8). And Thomas was never hired for any positions at Amentum, which constitutes an adverse employment action. To be sure, the protected activity must occur *before* the adverse employment action. So Thomas cannot claim that her failure to be hired for Supply Tech 18525, which she applied for on May 12, 2020, was retaliation for filing an EEOC complaint on July 13, 2020. But the record shows that Thomas began complaining about discrimination to Quintez Arnold as early as January 2020—well before she applied for any positions. So the court finds that Thomas has met the first two elements of a prima facie case.

Thomas can also establish a causal relationship between her protected activity and the adverse employment action. Amentum's decisionmakers knew about her protected activity because she complained to people involved in the hiring process. And the protected activity and the adverse action are not wholly unrelated. Thus, the burden shifts to Amentum.

2. <u>Non-discriminatory reasons</u>: As explained earlier, Amentum has articulated legitimate, non-discriminatory reasons for its decisions on all six positions at issue. For five of the positions, Amentum asserts that Thomas was ineligible because her employment would have violated the company's conflict of interest policy. And for the other position, Thomas was found not minimally qualified.

3. <u>Pretext</u>: The ultimate issue is thus whether Thomas has provided sufficient evidence of pretext. But Thomas made no argument regarding pretext. *See* (Doc. 48, p. 42-43). So the court finds that Thomas waived her argument by failing to brief it. *See T.R., supra.*

Accordingly, the court **GRANTS** summary judgment for Amentum on Count 5.

\* \* \*

The court went to great lengths to let the parties clarify what they were trying to say in their pleadings. And they did. But clarity cannot overcome the failure to make arguments when required, and the court cannot overlook those failures.

For the reasons explained above, the Court **DENIES IN PART** and **DENIES AS MOOT IN PART** Amentum's motion to strike (doc. 51), and **GRANTS** Amentum's motion for summary judgment (doc. 31).

**DONE** and **ORDERED** on December 28, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE