# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **RONDA THOMAS,**<br>　　　Plaintiff,<br><br>v.<br><br>**AMENTUM SERVICES, INC.,**<br>　　　Defendant. | **Case No. 1:21-cv-407-CLM** |

## MEMORANDUM OPINION

The court granted summary judgment for Amentum Services, Inc. and dismissed this case. (Docs. 64, 65). Ronda Thomas has moved to alter, amend, or vacate the court's order granting summary judgment. (Doc. 67). For the reasons stated below, the court will **DENY** the motion.

### I.   LEGAL STANDARD

Rule 59(e) permits a court to alter or amend a judgment within 28 days after judgment. *See* Fed. R. Civ. P. 59(e). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Shackleford v. Sailor's Wharf, Inc.*, 770 F. App'x 447, 451 (11th Cir. 2019) (per curiam) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)). A court's reconsideration of a prior order is an "extraordinary remedy" that should be used "sparingly." *Simionescu v. Bd. of Trustees of Univ. of Ala.*, No. 2:10-cv-1518-WMA, 2011 WL 13187279, at *1 (N.D. Ala. Nov. 9, 2011) (citation omitted).

Rule 59(e) was not constructed to give the moving party another "bite at the apple." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (citation omitted). Thus, Rule 59(e) may not be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

1

## II.   DISCUSSION

Thomas makes four primary arguments in support of her motion to alter, and the court will address each of them below.

But first, the court reiterates an important guiding principle: this court need not address theories or arguments that Thomas failed to properly raise. *See Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 489 (11th Cir. 2020). It is well-established in this Circuit that "arguments not raised at the district court level will generally not be considered on appeal." *Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (en banc). This rule applies not only to claims that were never raised in a complaint, but also to "grounds alleged in the complaint but not relied upon in summary judgment." *Id.* at 599. The onus is on the parties to formulate their arguments; this court has no obligation to "distill every potential argument that could be made based upon the materials before it." *Id.* With that in mind, the court proceeds to the arguments Thomas raises in her motion to alter.

### A. Thomas says the court resolved disputes of material fact in favor of Amentum.

Thomas first asserts that the court resolved disputes of material fact in favor of Amentum. (*See* Doc. 67, p. 2).

At the summary judgment stage, the court must view all evidence and make all reasonable inferences in favor of the non-moving party. *Allen v. Bd. of Pub. Educ. for Bibb Cnty*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). And the court followed this well-established directive.

*1. The Court's Chart (See Doc. 63, p. 5)*

To help make sense of a confusing factual narrative, the court created a chart to summarize the six job positions related to Thomas's claims. The purpose of the chart was to clarify (1) the person who was hired for each position, and (2) the reason Amentum gave for not hiring Thomas:

| Position | Applied | Filled By | Amentum's Non-Discriminatory Explanation |
|---|---|---|---|
| Supply Tech 18525 | May 12, 2020 | Melinda Richard<br>Black female, incumbent | Position already filled (May 11)<br>Ball was supervisor |
| Production Control Clerk | May 13, 2020 | Heather Sparks<br>White female, incumbent | Deemed not minimally qualified |
| Site Supervisor 19115 | June 17, 2020 | Jerry Moore<br>White male, 10 yrs. exp, Amentum K (temp agent) | Ineligible: supervise Ball<br>Minimally qualified |
| Supply Tech 19468 | July 15, 2020 | Daniel Ball<br>White male, incumbent | Position already filled (July 13), not minimally qualified |
| Site Supervisor 19626 | July 21, 2020 | Coty Flowers<br>White male (offers made to females) | Ineligible: supervise Ball<br>Minimally qualified |
| Site Supervisor 20406 | Sept. 3, 2020 | Kenneth Brown | Ineligible: supervise Ball |

Doc. 63, p. 5.

Thomas claims, generally, that the chart does not correctly summarize the evidence. But she does not brief the specific issues she claims to see. Instead, she inserts various statements and arguments into the court's chart. The court will address each statement in Thomas's chart that it construes to be an argument in support of the motion to alter.

First, Thomas says the court incorrectly describes Melinda Richard and Heather Sparks as "incumbents." But Thomas admitted that both Melinda Richard and Heather Sparks were incumbents. In the "undisputed facts" section of Amentum's brief in support, Amentum states: ". . . Thomas had applied for three positions with Amentum: (1) the Supply Tech 18525 position for which *incumbent* Melinda Richard was selected; (2) the Production Control Clerk Position for which *incumbent* Heather Sparks was selected . . ." (Doc. 33, p. 14–15) (emphasis added). In her response in opposition to Amentum's motion for summary judgment, Thomas objected to several of Amentum's undisputed facts—but she did *not* object to this fact. (*See* Doc. 48, p. 15). Thus, Amentum's assertion—in its entirety—was admitted. This court's Initial Order states, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." (Doc 9, pp. 23–24). And Thomas understood her obligation to object, if needed, because she devoted the first 18 pages of her brief to objecting to various facts. (*See* Doc. 48, pp. 3–20). The court was correct to state that Melinda Richard and Heather Sparks were incumbents.

3

Next, Thomas says that the court erred by stating that Thomas was "deemed not minimally qualified" for the Production Control Clerk position. But the column is labeled "Amentum's Non-Discriminatory Explanation." The court was noting that Amentum's reason for not hiring Thomas was that she was not minimally qualified. And Amentum clearly articulated to this court that it considered Thomas not minimally qualified for the Production Control Clerk position. (*See* Doc, 33, pp. 11–12) ("Thomas was deemed not minimally qualified for the Production Control Clerk position by the recruiter").

Thomas also says that the court erred by stating that Thomas would supervise Ball if hired for the Site Supervisor 19115 position. But again, the court was simply noting that this was the reason Amentum gave for not hiring Thomas. And indeed, that is the reason Amentum gave. (*See* Doc. 33, p. 13) ("Thomas was not eligible for the Site Supervisor I position because she would have had to supervise Daniel Ball, the father of her child.").

Lastly, Thomas says that the court erred by stating that Coty Flowers was a current Amentum employee when he was hired, and that he had supervisory experience on his resume. (*See* Doc. 67, p. 5). But the court simply did not say those things about Coty Flowers in its chart. Instead, the court noted that (1) Coty Flowers was hired for the Site Supervisor 19626 position; (2) Coty Flowers was a White male, and (3) Amentum made offers to female candidates before Coty Flowers. Again, the main purpose of the chart was to summarize who was hired for each position. And the court's chart accurately reflects those facts.

In sum, the court's chart correctly summarizes the evidence, and the court did not resolve disputes of material fact in favor of Amentum.

   2. *Personal Relationship Policy*

Next, Thomas objects to the court's finding that Amentum enforced its personal relationship policy.

To support her argument, Thomas points to the declaration of Danny Ball. In it, Ball states that at some unspecified time, R.C. Smith told Ball that Smith was engaged to someone "he was supervising when they got into a fight and he [Smith] was afraid he was going to be arrested." (Doc. 35-18, p. 6). Ball

4

says that he heard Smith talk to other employees about his fiancé and "nothing was done to stop it."

The court has reviewed the declaration again and notes that Ball does not say when this conversation happened, and more importantly, does not say that anyone who enforced the personal relationship policy knew about Smith's engagement. Contrast that with the evidence that, when the HR Manager received a tip that Site Supervisor Chris Haynes had an undisclosed family relationship with an employee under his supervision, Mr. Haynes was discharged. (*See* Doc. 32-7, p. 3).

The difference in these instances supports the court's point: When Amentum suspected or heard about violations of its personal relationships policy, Amentum ordered an investigation. In his sworn deposition testimony (which Thomas says the court should rely on), Jonathan Jones, the HR Manager, explained that when "an employee reported that there was a relationship between a supervisor and one of the workers . . .," he investigated. (*See* Doc. 32-21, p. 44–45) (explaining that he "had some conversations" and "called [people] up" and "asked them questions"). And when a violation of the personal relationships policy was confirmed, "[w]hat wound up happening is the employee wound up resigning, because . . . the supervisor would have had to have been moved." (*Id.* at p. 45). The record shows that Amentum enforced its personal relationship policy.

Even viewing Ball's statement in a light most favorable to Thomas, the court's decision would not change. At best, on one unknown occasion, someone allegedly violated the policy by supervising romantic partner. But there is no evidence that the decisionmakers knew about it, and that's what matters. Again, the record clearly establishes that when Amentum's HR Manager heard about a violation, he acted. An employee was never allowed to remain in positions if his or her continued employment in that role would violate the personal relationships policy.

The personal relationship policy was not discriminatory, and the court did not err by reaching that conclusion on an undisputed record.

### B. Thomas says that Amentum failed to argue that Thomas could not meet a motivating factor, convincing mosaic, or but for causation standard, and that Thomas need not prove the *McDonnell Douglas* framework to defeat summary judgment.

Thomas argues that "Amentum relies solely on the *McDonnell Douglas* prima facie case framework to defeat" Thomas's claims. That's generally true—at least with respect to Amentum's original brief in support. But Thomas herself included no argument related to a convincing mosaic standard in her brief in opposition. Indeed, Thomas never used the word "mosaic" in her brief. (*See* Doc. 48).

And while Thomas did briefly cite case law related to the "motivating factor" theory, she did so *only* in her discussion of the summary judgment legal standard, and not in any argument sections related to her claims.

Thomas points the court to materials that she filed after summary judgment briefing had closed. At the court's hearing, the court asked the parties to explain the arguments that had been made in the briefing. The hearing was not an opportunity for the parties to make new arguments or present new evidence. So any attempt to "re-brief" in Docs. 58, 58, 61, and 62 was not considered by the court.

"A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (citing *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001) (internal quotation marks omitted); *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265 (11th Cir. 2021) (affirming summary judgment against a religious mosaic argument that was not briefed).

While Thomas was not required to plead a mixed-motive theory in her complaint, she raised no argument along those lines in her response in opposition to Amentum's motion for summary judgment. *See Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 489 (11th Cir. 2020). Because Thomas bore the burden of formulating the arguments she wished for the court to address, the court was not required to evaluate the evidence under a theory

6

of discrimination that she did not raise. *See Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (en banc).

### C. Thomas says she is not required to prove pretext under her theory of mixed-motive or motivating factor.

Next, Thomas argues that she need not prove pretext under the theory of mixed-motive or motivating factor, and that any failure to do so is not fatal. That legal assertion is correct, as the *McDonnell Douglas* "pretext" requirement is not part of a mixed-motive theory of discrimination. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016).

But as explained above, Thomas did not adequately present a "mixed-motive" theory to the court. And this court need not address theories or arguments that Thomas failed to properly raise. *See Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 489 (11th Cir. 2020).

### D. Thomas says that though not required to do so, she has argued and proven pretext regarding her claims of race discrimination, gender discrimination, and retaliation.

Lastly, Thomas argues that she has proven pretext regarding her claims of race discrimination, gender discrimination, and retaliation. But as the court explained in its memorandum opinion, Thomas failed to carry her burden.

Thomas applied for six open positions at Amentum, as listed on the court's chart (*see* Doc. 63, p. 5). Four of the six positions would have required Thomas to supervise Daniel Ball, or be supervised by Daniel Ball, in violation of Amentum's conflict of interest policy. Thomas's counsel conceded this point at the hearing.

Thomas applied to two jobs that would not result in a violation of the personal relationship policy: (1) Supply Tech 19468, and (2) Production Control Clerk. And Amentum explained why it did not hire Thomas for either role.

Amentum explained that it did not hire Thomas for Supply Tech 19468 because Thomas applied on July 15, 2020, and the position had been filled on July 13, 2020. Thomas failed to explain why this explanation was inadequate. Amentum explained that it did not hire Thomas for the Production Control Clerk position because while she was considered, recruiters determined that

she was "not minimally qualified." Now, in her motion to alter, Thomas argues that she was indeed minimally qualified. But Thomas does not make this argument *anywhere* in her brief in opposition. (*See* Doc. 48).

Thomas bore the burden of formulating the arguments she wished for the court to address, the court was not required to evaluate the evidence under a theory of discrimination that she did not raise. *See Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (en banc).

### III.   CONCLUSION

For the reasons explained above, the court will **DENY** Thomas's motion to alter, amend, or vacate (doc. 67). The court will also **DENY** Amentum's motion to strike Plaintiff's Notice of Supplemental Authority (doc. 76).[1]

The court will enter a separate order that carries out this ruling.

**DONE** on June 9, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[1] While the motion to alter was pending, Thomas filed a Notice of Supplemental Authority. (*See* Doc. 75). The court reviewed and considered the Eleventh Circuit opinion that Thomas proffered. But the decision is an unpublished opinion, and is not binding on this court.